UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| LORETTE BASS | CIVIL ACTION NO. |
| VERSUS | JUDGE |
| THERMO FISHER SCIENTIFIC, INC. | MAGISTRATE JUDGE |

## COMPLAINT

This is a civil action for declaratory and injunctive relief and monetary damages.

## JURISDICTION

1. This Court has original subject matter jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.§ 1331 because the claims asserted herein arise under laws of the United States and Plaintiff seeks redress for violations of federal laws. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over related claims in the action arising under Louisiana law.

2. Pursuant to 28 U.S.C. § 1391, venue is proper in this judicial district. All of the acts and / or omissions giving rise to the claims asserted herein occurred in this judicial district.

## PARTIES

3. Plaintiff, Lorette Bass, ("Plaintiff") is an adult female, African American, and a citizen of the Louisiana residing in the municipality of Lake Charles, Calcasieu Parish, Louisiana. Plaintiff is a former employee of the Defendant.

4. Defendant is Thermo Fisher Scientific, Inc., a non-Louisiana business corporation with its principal place of business in Waltham, Massachusetts.

## FACTUAL BACKGROUND

5. Plaintiff began employment with Defendant in 2019 as a Sales Representative.

6. At approximately the same time Plaintiff was hired, Defendant hired a white male Sales Representative. Plaintiff and the white male had similar prior experience. They split the sales territory and their job duties were identical.

7. The white male Sales Representative was paid $72,000 plus $40,000 commission. Plaintiff was paid $52,000 plus $28,000 in commission.

8. When the white male Sales Representative resigned in mid-2021, Defendant assigned Plaintiff to work the entire territory: the territory previously covered by the white male Sales Representative and her existing territory (the "consolidated territory").

9. Plaintiff was paid $65,353.00 plus commission of $35,189.98 to work the consolidated territory, an amount less than the white male Sales Representative had been paid to work only half the same territory.

10. In mid-October 2021, Plaintiff transferred, at her request, to an hourly rate sales position. She was paid $35.16 an hour plus 35% commission. The commission was later changed to $65,000 per year.

11. In February 2022, Defendant offered Plaintiff the position of Regional Account Manager ("RAM") over an open territory, in addition to her existing duties. Defendant offered Plaintiff a salary lower than that paid to all other RAMs. Plaintiff requested a salary equal to that paid to the other RAMs.

12. The Sales Manager refused to discuss a higher salary and insisted that Plaintiff take the position (in addition to her existing duties) at the offered salary.

13. Plaintiff declined the position because the salary she was offered was $25,000 to $30,000 a year lower than other RAMs were paid.

14. After Plaintiff declined the position, the Sales Manager assigned Plaintiff all of the RAM duties, without the title and without any additional pay increase.

15. The Sales Manager told Plaintiff that she would have to work in the RAM role, in addition to her other duties, until the Sales Manager could fill the RAM position with someone else.

16. In May 2022, accounts created by the Sales Manager listed Plaintiff as the RAM for Southeast Region Accounts. The Sales Manager required Plaintiff to perform RAM duties but refused to increase her pay.

17. Plaintiff performed RAM duties without RAM pay for approximately 11 months. During this time, Defendant hired four white males and one white female for RAM job positions. Each was paid $25,000 to $30,000 more for the job position than Plaintiff had been offered.

18. During this time, Plaintiff complained to the Sales Manager about the discriminatory pay practices.

19. The Sales Manager again retaliated. The acts of retaliation included but were not limited to the following:

    a. Removing overtime and limiting Plaintiff to a 40-hour workweek.

    b. Withdrawing Plaintiff from the Motus Car program.

    c. Requiring Plaintiff to transfer out her Southeast Accounts.

20. Throughout these time periods Plaintiff sought assistance from her assigned Senior Human Resources manager. Plaintiff also made attempts to discuss her complaints with the Senior Director of Sales, but he would not take her calls.

21. In 2021 and 2022, Marc C. Casper, President and C.E.O. of Thermo Fisher, issued a notice to all employees, informing them that Thermo Fisher had an equal opportunity policy and referencing "the Company's EEO Officer," as the person within the company responsible for "analyzing the company's personnel actions and their effects to ensure compliance with our equal employment policy."

22. Plaintiff submitted an inquiry to Human Resources and to the Company's global Ethics Committee seeking the name and contact information of the "Company EEO Officer" and directions on how to file a complaint. No one knew anything about it.

23. In late November 2022, the Sales Manager informed Plaintiff that her role was being changed. Plaintiff was assigned low-producing accounts and told that her employment would be terminated if she did not meet production goals. However, the production goals were not initially defined, nor was Plaintiff given a written commission plan.

24. When, much later, the Sales Manager finally gave Plaintiff the production goals, they were not realistic or attainable as defined by the current sales data for the low-production accounts to which Plaintiff had been assigned.

25. On or about January 3, 2023, Defendant hired a white male for the position of Regional Account Manager, paying him at least $100,000 in base salary plus commission.

26. Had the position been offered to Plaintiff at the same salary and commission, she would have accepted. Instead, her employment was terminated February 14, 2023.

COUNT I

RACE DISCRIMINATION IN VIOLATION OF
42 U.S.C. SECTION 1981

27. Plaintiff incorporates herein by reference, as if set forth in full, the allegations of paragraphs 1 through 26.

28. Defendant discriminated against Plaintiff on the basis of her race by denying her the salary and commission it paid similarly situated white employees performing the same job duties.

29. Defendant discriminated against Plaintiff on the basis of her race by retaliating against her after she complained of race discrimination by compelling her to perform the job duties of the higher-paying Regional Account Manager position without the pay, by engaging in the acts described in paragraph 19, by assigning her low-paying accounts with unattainable production goals, and by refusing to offer her the RAM job position at equitable pay in January 2023, when it filled the job with a white male.

30. As a consequence of race discrimination Plaintiff suffered wage loss and other economic injury.

31. As a consequence of race discrimination Plaintiff suffered emotional distress and psychological injury.

32. Pursuant to the provisions of 42 U.S.C. §1981, Plaintiff seeks compensatory damages, punitive damages, costs and attorney's fees.

COUNT II

Discrimination on the basis of Race
La. R.S. 23:301, et seq.

33. The facts stated in paragraphs 1-36, above, constitute an unlawful employment practice by Defendant against Plaintiff actionable under the Louisiana Employment Discrimination Law, La. R.S. 23:301, et seq.

34. Pursuant to the provisions of La. R.S. 23:303 (C), on March 16, 2023, Plaintiff sent written notice of her complaints to the company's Senior Vice President and Chief Human Resources Officer, 168 3rd Street, Waltham, MA 02345. When there was no response, Plaintiff

resent the letter, this time also serving the Defendant's registered agent in Louisiana. Plaintiff has exhausted all administrative remedies that are a prerequisite to suit under Louisiana law.

35. Pursuant to the provisions of La. R.S. 23:303 (C), Plaintiff seeks and is entitled to recover back pay, front pay in lieu of reinstatement, compensatory damages, costs and attorney's fees.

### REQUEST FOR JURY TRIAL

36. Plaintiff requests a jury trial.

### PRAYER

WHEREFORE, Plaintiff prays that this complaint be deemed good and sufficient and that upon the conclusion of all due proceeding and legal delays there be judgment entered in his favor and against defendant, awarding Plaintiff all relief to which he is entitled, including costs and attorney's fee, compensatory damages and punitive damages, and such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted this 6th day of July, 2023

_____
Pamela R. Jones, La. Bar No. 19640

DOWNER, JONES, MARINO & WILHITE, L.L.C.
401 Market Street, Suite 1250
Shreveport, Louisiana 71101
Telephone:   (318) 213-4444
Facsimile:   (318) 213-4445
Email:       pjones@dhw-law.com

ATTORNEYS FOR PLAINTIFF